THOMAS II. BROWN, PLAINTIFF-APPELLEE, v. OSCAR W. NEVINS, DEFENDANT-APPELLANT.

Argued November 6, 1912—Decided April 21, 1913.

1. It was orally agreed, as part of a contract to put roofs on plaintiff's buildings, that the defendant would give plaintiff a written guaranty to the effect that the roofs would remain water tight for a period of ten years, and if by reasonable wear or tear the same should leak to repair the same without additional cost, and which guaranty was not put in writing until the final payment was made. *Held*, that the agreement to give a guaranty was a part of the original contract and that the written guaranty was merely a performance of this part of the contract and was not without consideration.

2. The roofs having leaked, the burden of proving that the leakage was not due to reasonable wear and tear, under the guaranty was, as a matter of defence, upon the defendant.

3. Plaintiff being the beneficial owner of the buildings, his right to sue for a breach of warranty by defendant was not affected by a subsequent change of title to the buildings.

---

On appeal from the Hoboken District Court.

Before Justices SWAYZE, VOORHEES and KALISCH.

For the appellant, *Benjamin J. Darling.*

For the appellee, *Norman L. Rowe.*

The opinion of the court was delivered by

KALISCH, J. The defendant gave to the plaintiff the following written guaranty: "In consideration of the sum of $340 final payment to me paid by Thomas H. Brown, for work, labor and material putting on roofs on Nos. 64, 66 and 68 Tuers avenue, Jersey City, New Jersey, I hereby agree that the said roofs will remain water tight for a period of ten years, and if by reasonable wear or tear the same shall leak within that time I agree further without additional cost to repair the same." It appeared that at the time the original work was given out by the plaintiff to the defendant, the defendant agreed to give to the plaintiff a written guaranty to the above effect, but it was not put in writing until the final payment was made.

Subsequently, within the period of the guaranty, the roofs became leaky and the defendant was notified of the fact and requested to repair the same, which he refused to do, whereupon the plaintiff proceeded to make repairs and brought his action in the District Court of the city of Hoboken against the defendant for a breach of warranty and sought to recover the outlays necessarily incurred in repairing the roofs and the damages sustained by him. The case was tried by the court, sitting without a jury. The court gave judgment for the plaintiff for $200 and costs. From this judgment the defendant appeals and assigns some forty-six reasons for its reversal. Most of the points raised for the appellant involve questions of fact which were determined against him. One of the points raised was that the guaranty was without consideration. The court found that the agreement to give a guaranty was a part of the original contract, and that the written guaranty was merely a performance of this part of the contract. There was testimony to justify such finding. The point made in this regard, therefore, fails.

Another ground urged by the appellant for reversal is that there had been a change of title since the making of the guaranty, and that therefore the plaintiff is barred from a recovery thereon.

The court found, and there is evidence to justify it, that despite the change of title the plaintiff remained the beneficial owner. If so, he was entitled to recover such damages as he sustained for a breach of the guaranty. It is further insisted by the appellant that the burden of proving that the leaks were the result of reasonable wear and tear of the roofs was upon the plaintiff. This cannot be so. It is to be observed that the guaranty was twofold—*first,* that the roofs would remain water tight for ten years; and *second,* that the defendant would repair if they leaked from reasonable wear and tear. The roofs were put on in the summer of 1909 and they became leaky in September, 1911. We think, therefore, that the burden of proving that the leakage was not due to reasonable wear and tear was as a matter of defence upon the defendant. But whatever may be the legal rule in that regard it cannot be drawn into question here, because there was evidence justifying a finding for the plaintiff.

We also think that the court committed no error in overruling the question put to Mr. Crane, upon his cross-examination, as to whether he knew the usage in the roofing trade as regards slag guarantees. Upon his direct examination the witness had testified merely as to the condition that he found the roofs in. It was upon the cross-examination of this witness that the appellant's counsel questioned him as to his experience as a practical roofer and endeavored to elicit expert testimony from him.

The materiality or relevancy of the question whether the witness knew the usage in the roofing trade as regards slag guarantees is not made apparent from any testimony which preceded it. It was not cross-examination. It could have been properly excluded, in the discretion of the court, upon that ground. And further the only responsive answer the witness could have made to the question would have been either yes or no. Answered either way it could not have shed any light upon the controversy. Its exclusion, therefore, was not harmful to the defendant. If the appellant intended to avail himself of the benefit of proving usage he should either have made a distinct offer to prove it or pushed his inquiries

to the witness in that regard, and obtained the ruling of the court thereon.

The only remaining reason assigned for reversal which requires consideration is founded upon the action of the court in excluding the following questions put to the defendant, upon his direct examination. "*Q.* As a practical roofer and contractor what effect would that have on the roof?" This question related to the condition of certain flues which the defendant endeavored to show caused the leakage and that it was not the condition of the roofs. The other question was, "Do you know whether a broken flue lining will cause a leak in an apartment beneath?"

These questions were improperly excluded. The defendant was entitled to show that the leaks were due to a different cause for which he was not responsible. But it appears that the errors committed by the trial judge in excluding the questions were fully cured, by the court permitting the defendant to testify how far from the top of the chimney and the top of the roof the flue linings were broken and what effect that had in regard to the leakage attributed to the roof. On this point the defendant testified: "Naturally cause it to leak. It would allow snow and rain to go in and soak through to the walls below."

And further, the court allowed the defendant to testify that leaving flue lining out of the chimney would cause leakage and he was also allowed to state the condition of the bulkhead and how its condition might have caused the leakage. It further appears that an expert named Miller, called by the defendant, was permitted to testify as to the various conditions which he found, to which the leakage attributed to the roofs might have been due. This being so, we are unable to perceive how the defendant suffered any harm from the exclusion of the two questions referred to. He had the benefit subsequently of the testimony that he sought to introduce, which, in effect, obliterated the judicial mistake in excluding it in the first instance.

The judgment will be affirmed.